875 F.2d 1404
 57 USLW 2715, 111 Lab.Cas. P 11,209,
11 Employee Benefits Ca 1739
 Richard STAHL and Avis Stahl, Plaintiffs-Appellants,
v.
TONY'S BUILDING MATERIALS, INC., Western Conference of
Teamsters Pension Trust Fund, and Prudential
Insurance Company of America,
Defendants-Appellees.
 No. 88-5952.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 9, 1989.
Decided May 25, 1989.
 
 John G. Clancy, Durango, Colo., for plaintiffs-appellants.
 Robert A. Gordon, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED, FARRIS and PREGERSON, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Richard Stahl and his wife, Avis, appeal the district court's grant of summary judgment in favor of the Western Conference of Teamsters Trust Fund (Trust Fund) and the Trust Fund's paying agent, Prudential Insurance Company of America (Prudential) and the dismissal of the Stahls' action brought pursuant to the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1132(a) (1982).[1] On appeal, the Stahls seek restoration of Stahl's full pension benefits, contending that the Trust Fund and Prudential breached their fiduciary duty to Stahl by failing to warn him that his pension benefits could be drastically reduced upon the expiration of the collective bargaining agreement between his union and his employer. We affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 Richard Stahl, a member of the Teamsters Union, worked as a truck driver for Tony's Building Materials, Inc. (Tony's) for twenty-two years, from January 1962 until his retirement in February 1984. Between September 1972 and September 1983, Tony's and the Teamsters were parties to four consecutive collective bargaining agreements which required Tony's to make contributions to the Trust Fund's pension plan on behalf of its employees, including Stahl. After expiration of the fourth collective bargaining agreement in September 1983, there were negotiations between Tony's and its employees which led to a vote by a majority of Tony's employees on December 12, 1983 to eliminate the pension plan from the new agreement, retroactive to September 30, 1983.[2] Tony's had stopped making payments to the plan upon expiration of the collective bargaining agreement on September 30. After the three previous collective bargaining agreements had expired, there had been similar negotiations during which Tony's always continued to make payments to the plan and which always resulted in a continuation of the pension benefits under renewed collective bargaining agreements.
 
 
 3
 The amount of a plan participant's pension depends in large part on how many "service credits" he has accumulated. "Future" service credits are based on the contributions made to the pension plan by the participant's employer. When a participant earns ten years of future service credits, his pension rights vest and he has a nonforfeitable right to receive a pension based upon those future service credits regardless of whether the employer thereafter continues contributing to the plan. "Past" service credits are based on the participant's work for his employer before the employer joins the plan and begins making payments to it. Under Article IV, Sec. 4 of the pension plan,[3] a participant could lose his past service credits if the employer withdraws from and stops making payments to the plan before the participant retires.
 
 
 4
 Stahl retired on February 2, 1984 and applied for his pension benefits on March 1, 1984. The Trust Fund recognized that Stahl's pension rights had vested by October 1983, when Tony's had stopped making payments to the plan, and the Trust Fund awarded Stahl a pension of $267 per month based on his future service credits only. Pursuant to Article IV, Sec. 4, the Trust Fund refused to recognize Stahl's ten years of past service credits in computing his pension amount because Tony's had withdrawn from the pension plan prior to Stahl's retirement. Had the Trust Fund used Stahl's past service credits to calculate Stahl's pension, he would have received $501 per month rather than the $267 per month the Trust Fund found that he was entitled to receive.
 
 
 5
 On May 9, 1986, Richard and Avis Stahl filed suit in district court against Tony's, the Trust Fund, Prudential, and the Trust Fund's board of trustees. The Stahls alleged that all defendants had breached their fiduciary duty to Stahl by failing to warn him that he could lose his past service credits if he continued working for Tony's after expiration of the collective bargaining agreement. The Stahls sought restoration of Stahl's full pension benefits based on both past and future service credits, damages for negligent infliction of emotional distress, punitive damages, and reasonable attorneys' fees and costs. The district court dismissed the action against Tony's and the board of trustees, and granted the Trust Fund and Prudential's motion for summary judgment, holding that the Trust Fund's summary plan description, issued pursuant to 29 U.S.C. Sec. 1022 (1982), put Stahl on notice that if the collective bargaining agreement expired, his past service credits would be affected because contributions to the pension plan could cease.[4]
 
 
 6
 This appeal concerns only the district court's finding that the Trust Fund and Prudential did not breach their fiduciary duty to Stahl by failing to warn him that expiration of the collective bargaining agreement could lead to a sharp reduction in his pension benefits.
 
 II.
 STANDARD OF REVIEW
 
 7
 We review the district court's grant of summary judgment de novo. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986).
 
 III.
 ADEQUACY OF THE SUMMARY PLAN DESCRIPTION
 
 8
 ERISA requires that a summary plan description explain the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits," 29 U.S.C. Sec. 1022(b), "in a manner that is calculated to be understood by the average plan participant." 29 U.S.C. Sec. 1022(a)(1).[5] A summary plan description "must not have the effect [of] misleading, misinforming or failing to inform participants and beneficiaries." 29 C.F.R. Sec. 2520.102-2(b) (1987).[6]
 
 
 9
 In the present case, the summary plan description contains the following relevant language. On the inside front cover of the booklet, under "Notice to Covered Employers, Employees and Local Unions," the summary plan description states:
 
 
 10
 To be eligible to participate in this Pension Plan, you must be covered under a bona fide written collective bargaining agreement (labor contract) between an Employer and a Local Union of The Western Conference of Teamsters. That agreement must provide for contributions on your behalf to The Western Conference of Teamsters Pension Trust Fund....
 
 
 11
 On page 11 under "Service Credits," the summary plan description states:
 
 
 12
 If your employer stops making contributions to the Pension Trust Fund for the bargaining unit you are working in, any employment you had with that employer may be disregarded in determining your past service credits (see page 48).
 
 
 13
 On page 36 under "Service Credits," the summary plan description states:
 
 IMPORTANT: Restrictions
 
 14
 * Some or all of your past service credits will be cancelled in certain cases if your employer stops making contributions to the Pension Trust Fund (see page 48).
 
 
 15
 On page 48 under "Eligibility for Past Service Credits," the summary plan description states:
 
 
 16
 If your employer stops contributing to the Plan on your behalf for reasons other than a change in type of work you are performing, change in job location, quit, discharge, disability, retirement or death, any past employment you had with that employer (or a predecessor of that employer) will be disregarded in determining past service credits.
 
 
 17
 Although the Stahls admit that these statements made clear that an employee could lose past service credits if the employer did not make pension contributions,[7] they believe that the summary plan description should have gone further. They contend that the description failed to inform Stahl of the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits" as required by 29 U.S.C. Sec. 1022(b) (1982). See Appellant's Opening Brief at 8, 10-19. Specifically, the Stahls complain that these statements did not indicate (1) when or why Tony's might fail to contribute to the plan or (2) what Stahl could do to prevent a loss of his pension benefits. Thus, the Stahls maintain that the description should have explained that employers are especially likely to fail to make contributions after the expiration of a collective bargaining agreement, that employees put their past service credits at risk by continuing to work at such times, and that they can avoid losing their past service credits by retiring.
 
 
 18
 The omission of these matters was not a mere technical error, the Stahls assert, because Richard needed the additional explanations to understand the rule. They point out that even Michael Uranga, the Deputy Administer for the pension plan's pension department, thought that employers ordinarily would continue to make contributions after the expiration of a collective bargaining agreement. They assert, further, that Richard Stahl's own experience led him to believe that Tony's would continue to contribute to the pension fund as it had done at the expiration of previous agreements in 1977 and 1980.
 
 
 19
 The Stahls present an appealing case, but the fact is that no violation of ERISA occurred. ERISA, as noted above, provides for summary plan descriptions in 29 U.S.C. Sec. 1022. Section 1022(b) curtly states in the language quoted by the Stahls that a summary plan description shall contain a description of "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." Several courts have found this statement self-explanatory and thus have not attempted to explain it further when evaluating a summary plan description.[8] See, e.g., Anderson v. Alpha Portland Indus., Inc., 836 F.2d 1512, 1520 (8th Cir.1988); Govoni v. Bricklayers, Masons & Plasterers Int'l Union, Local No. 5 Pension Fund, 732 F.2d 250, 252 (1st Cir.1984). Other courts, however, have added useful glosses to the language. The Seventh Circuit has approved the argument that " '[i]n theory, employees should be able to infer from [the] information in the plan description that there is a risk of loss, and perhaps the nature of the risk.' " Daniel v. International Bhd. of Teamsters, 561 F.2d 1223, 1249 n. 58 (7th Cir.1977) (quoting an appellant's brief). The Second Circuit, moreover, has found Sec. 1022(b) to require an explanation of the "full import" of the provisions affecting an employee. Chambless v. Masters, Mates & Pilots Pension Plan, 772 F.2d 1032, 1040 (2d Cir.1985), cert. denied, 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986).
 
 
 20
 Whether we look solely to the language of Sec. 1022(b), or to both the statute and the glosses provided by Daniel and Chambless, we cannot rule that ERISA required the summary plan description in this case to contain any additional information about what circumstances could result in a loss of benefits. The description explained the rule applied to Stahl in perfectly understandable terms. It made clear, in particular, that the cessation of employer contributions, and nothing else, triggers the loss of past service credits. Stahl could infer from this information that he risked a loss and could have determined the exact nature of the loss and the full import of the provision applied to him. To interpret Sec. 1022(b), as the Stahls do, to require summary plan descriptions to discuss the application of general rules to a wide range of particular situations and thereby provide specific advice to employees on how to shape their conduct to fit the rules, would undermine the statute in three ways.
 
 
 21
 First, such an interpretation effectively would bar the loss of pension benefits in any situation not precisely covered by the rules. The description in this case obviously could have warned Stahl more specifically about the rule depriving him of his past service credits. It could have stated, for example, that: "If you are eligible to retire and you continue to work after the expiration of your collective bargaining agreement, in the event that the collective bargaining agreement is not renewed, you could lose past service credits and your pension could be drastically reduced." This proves nothing, however.
 
 
 22
 Even this particular formulation may not cover all contingencies. Those not precisely informed by this level of particularity could argue, as do the Stahls, that the statement should have explicitly dealt with their situation. A plan summary description, therefore, cannot violate ERISA merely because it could have included language more specifically discussing the precise situation of a particular beneficiary. The description, instead, should provide information about the general circumstances in which benefits could be lost. The plan's rules should be explained to permit the ordinary employee to recognize that certain events or actions could trigger a loss of benefits. It need not discuss every imaginable situation in which such events or actions might occur, but it must be specific enough to enable the ordinary employee to sense when there is a danger that benefits could be lost or diminished.
 
 
 23
 Second, the Stahls' interpretation could force pension plan administrators to include misleading statements in their summary plan descriptions. Every employee stands on a different footing and therefore would require different advice. What properly would guide one employee might be inconsistent with the interests of another. Thus, although warning Stahl that his pension benefits "could be drastically reduced" by failing to retire before Tony's withdrew from the plan may have helped him, that warning might not have served the interests of employees who had few or no past service credits. The employees, for example, might retire earlier than necessary or vote to extend a collective bargaining agreement that was not in their own best interests. Summary plan descriptions, in other words, cannot provide advice that is equally applicable to all employees. They should focus, instead, upon describing general rules in a way that allows the ordinary employee to understand when and where opportunity beckons and danger lurks.
 
 
 24
 Third, the Stahls' interpretation would frustrate the purpose of a summary description of the plan. A summary plan description does no good unless an employee can read and digest it. The description in this case already exceeded fifty pages. To require ERISA summary plan descriptions to include accurate and complete information about all of the different factual settings in which a given pension plan rule might apply would lead to the promulgation of "summaries" many pages in length, perhaps even longer than the plan itself, that would be of no use to the ordinary employee. See Pompano v. Michael Schiavone & Sons, Inc., 680 F.2d 911, 914 (2d Cir.1982) (stating that the purpose of Sec. 1022(b) is to provide a brief restatement).
 
 
 25
 Furthermore, imposing such a requirement would conflict with the scheme of the regulations promulgated under the statute. The regulations specify a large number of topics that a plan summary description must cover, but say little about what it must explain in discussing each topic. See 29 C.F.R. Sec. 2520.102-3(a)-(t) (1987). These regulations reflect the reasonable interpretation that descriptions must describe all aspects of a plan, but must remain concise so that employees will read them. Each and every case, therefore, cannot require trust fund administrators to include additional warnings in their summary plan descriptions.
 
 
 26
 Finally, the Stahls' position finds little support in the cases upon which they rely: Genter v. Acme Scale & Supply Co., 776 F.2d 1180 (3d Cir.1985); Chambless, 772 F.2d 1032; and Ruotolo v. Sherwin-Williams Co., 622 F.Supp. 546 (D.Conn.1985). In Genter and Ruotolo, the summary plan descriptions failed to provide any information about the specific rule sought to be avoided by the employee. See Genter, 776 F.2d at 1185-86; Ruotolo, 622 F.Supp. at 549. In Chambless, the inadequate notice not only failed to meet ERISA requirements, but also involved a plan amendment held to be arbitrary and capricious. See 772 F.2d at 1040. These cases do not require the summary plan description at issue to contain more information with respect to the problem the Stahl's confronted than it did.
 
 IV.
 EXISTENCE OF A FIDUCIARY DUTY
 
 27
 Stahl contends that the Trust Fund had the duty to warn him individually prior to expiration of the collective bargaining agreement that the expiration would put his past service credits in jeopardy. ERISA contains no provision requiring pension plan administrators to provide notice to plan participants other than the disclosure provisions of 29 U.S.C. Secs. 1021(a)(1) and 1022 (1982), regarding the requirement of publishing a summary plan description. However, as fiduciaries, the duties of plan administrators go beyond those specified in the statute, and include duties derived from common law trust principles. See Central States, Southeast & Southwest Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985) ("[R]ather than explicitly enumerating all of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility."); Amalgamated Clothing & Textile Workers Union v. Murdock, 861 F.2d 1406, 1411 (9th Cir.1988) (stating, in discussing the duty of loyalty, that ERISA had adopted common law trust principles).
 
 
 28
 We decline to rule, however, that the Trust Fund's fiduciary duties required it to provide any individualized notice to Stahl. The Trust Fund, as shown above, adequately explained the rule that it applied to Stahl in its summary plan description. Even though compliance with the specific terms of ERISA does not eliminate all other fiduciary duties in all other situations, we decline to impose the disclosure requirement that the Stahls request. Not only do we lack evidence about the feasibility of providing such notice in this particular case, but to impose such a disclosure requirement would create a conflict with the Third and Seventh Circuits on an important national issue. See Cummings v. Briggs & Stratton Retirement Plan, 797 F.2d 383, 387 (7th Cir.) (summary plan description met ERISA's disclosure requirements and there was no duty to individually warn plan participants or beneficiaries), cert. denied, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 703 (1986); Allen v. Atlantic Richfield Retirement Plan, 480 F.Supp. 848, 851-52 (E.D.Pa.1979) (since summary plan description clearly warned employees of thirty-day waiting period for election of benefits, and since there was no indication that Congress intended to impose any further duties on plan fiduciaries, trustees had fulfilled their fiduciary duties), aff'd, 633 F.2d 209 (3d Cir.1980).[9]
 
 V.
 CONCLUSION
 
 29
 In sum, although Stahl undoubtedly has suffered a loss that he could have avoided, we can find no reason to impose liability on the Trust Fund, which, after all, is for the benefit of all covered employees. Funds distributed improperly to one employee are taken from all other employees who also are beneficiaries of the plan. While some of these beneficiaries may escape the burden of the improper distribution, others will not.
 
 
 30
 AFFIRMED.
 
 PREGERSON, Circuit Judge, dissenting.[1]
 
 31
 Richard Stahl and his wife, Avis, appeal the district court's grant of summary judgment in favor of the Western Conference of Teamsters Trust Fund (Trust Fund) and the Trust Fund's paying agent, Prudential Insurance Company of America (Prudential) and the dismissal of the Stahls' action brought pursuant to the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1132(a).[2] On appeal, the Stahls seek restoration of Stahl's full pension benefits, contending that the Trust Fund and Prudential breached their fiduciary duty to Stahl by failing to warn him that his pension benefits could be drastically reduced upon the expiration of the collective bargaining agreement between his union and his employer. I vote to reverse.
 
 
 32
 * Richard Stahl, a member of the Teamsters Union, worked as a truck driver for Tony's Building Materials, Inc. (Tony's) for 22 years, from January 1962 until his retirement in February 1982. Between September 1972 and September 1983, Tony's and the Teamsters were parties to four consecutive collective bargaining agreements which required Tony's to make contributions to the Trust Fund's pension plan on behalf of its employees, including Stahl. After expiration of the fourth collective bargaining agreement in September 1983, there were negotiations between Tony's and its employees which led to a vote by a majority of Tony's employees on December 12, 1983 to eliminate the pension plan from the new agreement, retroactive to September 30, 1983.[3] Tony's had stopped making payments to the plan upon expiration of the collective bargaining agreement on September 30. After the three previous collective bargaining agreements had expired, there had been similar negotiations during which Tony's always continued to make payments to the plan and which always resulted in a continuation of the pension benefits under renewed collective bargaining agreements.
 
 
 33
 The amount of a plan participant's pension depends in large part on how many "service credits" he or she has accumulated. "Future" service credits are based on the contributions made to the pension plan by the participant's employer. When a participant earns 10 years of future service credits, his or her pension rights vest and he or she has a nonforfeitable right to receive a pension based upon those future service credits regardless of whether the employer thereafter continues contributing to the plan. "Past" service credits are based on the participant's work for his or her employer before the employer joins the plan and begins making payments to it. Under Article IV, Sec. 4 of the pension plan,[4] a participant could lose his or her past service credits if the employer withdraws from and stops making payments to the plan before the participant retires.
 
 
 34
 Stahl retired on February 2, 1984 and applied for his pension benefits on March 1, 1984. The Trust Fund recognized that Stahl's pension rights had vested by October 1983, when Tony's had stopped making payments to the plan, and the Trust Fund awarded Stahl a pension of $267 per month based on his future service credits only. Pursuant to Article IV, Sec. 4, the Trust Fund refused to recognize Stahl's 10 years of past service credits in computing his pension amount because Tony's had withdrawn from the pension plan prior to Stahl's retirement. Had the Trust Fund used Stahl's past service credits to calculate Stahl's pension, he would have received $501 per month rather than the $267 per month the Trust Fund found that he was entitled to receive.
 
 
 35
 On May 9, 1986, Richard and Avis Stahl filed suit in district court against Tony's, the Trust Fund, Prudential, and the Trust Fund's board of trustees. The Stahls alleged that all defendants had breached their fiduciary duty to Stahl by failing to warn him that he could lose his past service credits if he continued working for Tony's after expiration of the collective bargaining agreement. The Stahls sought restoration of Stahl's full pension benefits based on both past and future service credits, damages for negligent infliction of emotional distress, punitive damages, and reasonable attorney's fees and costs. The district court dismissed the action against Tony's and the board of trustees, and granted the Trust Fund and Prudential's motion for summary judgment, holding that the Trust Fund's summary plan description, issued pursuant to 29 U.S.C. Sec. 1022, put Stahl on notice that if the collective bargaining agreement expired, his past service credits would be affected because contributions to the pension plan could cease.[5]
 
 
 36
 This appeal concerns only the district court's finding that the Trust Fund and Prudential did not breach their fiduciary duty to Stahl by failing to warn him that expiration of the collective bargaining agreement could lead to a sharp reduction in his pension benefits.
 
 II
 
 37
 We review the district court's grant of summary judgment de novo. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986).
 
 III
 
 38
 ERISA requires that a summary plan description explain the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits," 29 U.S.C. Sec. 1022(b), "in a manner that is calculated to be understood by the average plan participant." 29 U.S.C. Sec. 1022(a)(1).[6] A summary plan description "must not have the effect [of] misleading, misinforming or failing to inform participants and beneficiaries." 29 C.F.R. Sec. 2520.102-2(b).[7]
 
 
 39
 In the present case, the summary plan description contains the following relevant language. On the inside front cover of the booklet, under "Notice to Covered Employers, Employees and Local Unions," the summary plan description states:
 
 
 40
 To be eligible to participate in this Pension Plan, you must be covered under a bona fide written collective bargaining agreement (labor contract) between an Employer and a Local Union of The Western Conference of Teamsters. That agreement must provide for contributions on your behalf to The Western Conference of Teamsters Pension Trust Fund....
 
 
 41
 On page 11 under "Service Credits," the summary plan description states:
 
 
 42
 If your employer stops making contributions to the Pension Trust Fund for the bargaining unit you are working in, any employment you had with that employer may be disregarded in determining your past service credits (see page 48).
 
 
 43
 On page 36 under "Service Credits," the summary plan description states:
 
 IMPORTANT: Restrictions
 
 44
 * Some or all of your past service credits will be cancelled in certain cases if your employer stops making contributions to the Pension Trust Fund (see page 48).
 
 
 45
 On page 48 under "Eligibility for Past Service Credits," the summary plan description states:If your employer stops contributing to the Plan on your behalf for reasons other than a change in type of work you are performing, change in job location, quit, discharge, disability, retirement or death, any past employment you had with that employer (or a predecessor of that employer) will be disregarded in determining past service credits.
 
 
 46
 The information contained in the summary plan description does not satisfy the requirements set forth in the statute and regulation. The Notice on the inside cover regarding the need to be covered by a collective bargaining agreement could appear to mean that to become a member of the pension plan, a worker must be covered by a collective bargaining agreement. There is no clue given that this introductory comment is central to the later discussion of past service credits or that expiration of the collective bargaining agreement could lead to a loss of previously accrued service credits.
 
 
 47
 While the passages on pages 11 and 36 refer to the possibility of losing past service credits under certain (unnamed) circumstances if the employer stops making contributions to the plan, nowhere in the booklet is the crucial connection between the collective bargaining agreement and past service credits mentioned. The passages on pages 11 and 36 refer the reader to page 48, but page 48 does not even hint at what circumstances might lead to a loss of past service credits; it merely recites the circumstances in which an employer's failure to make contributions will not result in such a loss. If the summary plan description can provide a detailed list of when a worker's past service credits will not be jeopardized, it certainly can provide the much more important information regarding the specific circumstances that might put past service credits at risk. See Ruotolo v. Sherwin-Williams Co., 622 F.Supp. 546, 549 (D.Conn.1985) (because focus of concern of 29 U.S.C. Sec. 1022 is with circumstances that might cause a participant not to receive benefits, it is appropriate to subject a summary plan description to careful scrutiny where it is challenged for having failed to inform participants of circumstances that might lead to loss or reduction of benefits).
 
 
 48
 Taking into account "the level of comprehension and education of typical plan participants," 29 C.F.R. Sec. 2520.102-2(a), the reasonable worker covered by the Teamsters pension plan cannot be expected to make the connection between the general Notice at the front of the booklet and the later vague references to possible loss of past service credits. 29 C.F.R. Sec. 2520.102-2(a) also states that use of clarifying examples and illustrations as well as clear cross references will usually be required in making the summary plan description understandable to the average plan participant. In this case, such examples, illustrations, or cross references were necessary, but were not provided.
 
 
 49
 This incomplete disclosure violates the requirements of 29 C.F.R. Sec. 2510.102-2(b) that (1) the format of the summary plan description must not have the effect of failing to inform participants, (2) any limitations or restrictions of plan benefits must not be minimized or rendered obscure, and (3) restrictive plan provisions must be disclosed in close conjunction with the summary of benefits, unless adjacent to the benefit description the page on which the restrictions are described is noted. Here, the average worker is simply not going to perceive the relevance of the introductory remarks about collective bargaining agreements to the later discussions of past service credits.[8] See Ruotolo, 622 F.Supp. at 549-50 (where summary plan description nowhere told employee in straightforward terms that disability benefits would be reduced by 70% of any earnings received from paid employment during disability period, but only alluded to provision in two sentences that were vague and ambiguous or might seem so to average Plan participant, summary plan description failed to meet standards of Sec. 1022).
 
 
 50
 Stahl clearly relied upon and was injured by the plan's failure to include information about the circumstances in which an employer might stop making payments to the plan. As Stahl has said, had he known the risk of loss, he certainly would have retired prior to expiration of the agreement.[9] See Ruotolo, 622 F.Supp. at 550 (plaintiff is entitled to recover only if he can establish that he lost disability benefits as a result of his reliance on deficiencies in summary plan description).
 
 
 51
 I would therefore hold that if the Trust Fund does not provide individual notice to plan participants, see Sec. IV infra, it must provide notice by including a warning in the summary plan description that, for those workers who are eligible to retire, working past the expiration of a collective bargaining agreement could lead to a loss of past service credits, and therefore to a loss of a large portion of the worker's pension. In this case, the lack of such a necessary warning in the summary plan description violated ERISA's fiduciary duty of disclosure. See 29 U.S.C. Sec. 1021.[10]
 
 
 52
 An appropriate warning might state: "If you are eligible to retire and you continue to work after the expiration of your collective bargaining agreement, in the event that the collective bargaining agreement is not renewed, you could lose all past service credits and your pension could be drastically reduced."
 
 IV
 
 53
 Stahl contends that the Trust Fund had the duty to individually warn him prior to expiration of the collective bargaining agreement that the expiration would put his past service credits in jeopardy. ERISA contains no provision requiring pension plan administrators to provide notice to plan participants other than the disclosure provisions of 29 U.S.C. Secs. 1021(a)(1) and 1022, regarding the requirement of publishing a summary plan description. However, as fiduciaries, the duties of plan administrators go beyond those specified in the statute, and include duties derived from common law trust principles. See Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 570-72, 105 S.Ct. 2833, 2840-41, 86 L.Ed.2d 447 (1985) ("[R]ather than explicitly enumerating all of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility."); Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock, 861 F.2d 1406, 1411 (9th Cir.1988) (where we stated, in discussing the duty of loyalty, that ERISA had adopted common law trust principles).
 
 
 54
 Therefore, the fiduciary duty of disclosure can include duties other than those specifically mentioned in ERISA. But see, e.g., Cummings v. Briggs & Stratton Retirement Plan, 797 F.2d 383, 387 (7th Cir.) (summary plan description met ERISA's disclosure requirements and there was no duty to individually warn plan participants or beneficiaries), cert. denied, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 703 (1986); Allen v. Atlantic Richfield Retirement Plan, 480 F.Supp. 848, 851-52 (E.D.Penn.1979) aff'd 633 F.2d 209 (3d Cir.1980) (since summary plan description clearly warned employees of 30-day waiting period for election of benefits, and since there was no indication that Congress intended to impose any further duties on plan fiduciaries, trustees had fulfilled their fiduciary duties).
 
 
 55
 In the present case, unlike in Cummings and Allen, the summary plan description does not adequately explain the possible risks of losing past service credits. Here, where the summary plan description was inadequate, the Trust Fund, as a fiduciary, had the duty to individually warn employees who were eligible to retire that expiration of the collective bargaining agreement could put their past service credits and their pension benefits at risk.
 
 V
 
 56
 In short, the summary plan description is inadequate because it fails to satisfy ERISA's disclosure requirements. 29 U.S.C. Secs. 1021 and 1022. This inadequacy placed a small group of workers at great risk of losing a large portion of its pension benefits upon expiration of the collective bargaining agreement. I therefore conclude that the Trust Fund should have either (1) formulated an appropriate warning to be added to the summary plan description's discussion of past service credits or (2) before expiration of the collective bargaining agreement, provided individual notice to those participants who had past service credits and who were eligible to retire, that if they continued to work past the expiration of the agreement their pension benefits could be sharply reduced. The cost of either modifying the summary plan description to include a warning or programming the necessary information into a computer and notifying those who are at risk was outweighed by the benefit to the affected workers.
 
 
 57
 Because the Trust Fund breached its fiduciary duty to Stahl by failing to warn him, either by way of the summary plan description or by providing him with individual notice, that his past service credits were in jeopardy, I would hold that the Trust Fund and Prudential must pay Stahl his full pension in the amount of $501 per month, retroactive to March 1984 with interest.
 
 
 58
 I would reverse the district court's grant of summary judgment in favor of the Trust Fund and Prudential and, because no genuine issues of material fact remain to be decided, I would remand to the district court with instructions to enter judgment in favor of the Stahls, to award Stahl his full pension benefits as discussed above, and to determine and award reasonable trial and appellate attorney's fees and costs to the Stahls pursuant to 29 U.S.C. Sec. 1132(g).
 
 
 
 [1]
 29 U.S.C. Sec. 1132(a) provides in pertinent part:
 A civil action may be brought--
 (1) by a participant ...
 (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ...
 
 
 [2]
 There is some evidence that the employees' vote to eliminate the pension plan was based on Tony's financial difficulties, which ultimately ended in the company's bankruptcy
 
 
 [3]
 Article IV, Sec. 4 of the pension plan provides:
 [I]f an individual ... ceases to be credited with Covered Hours because his Employer discontinues contributions to the Trust Fund on his behalf after February 28, 1977, for any reason other than a change in the individual's job classification, or a change in the place at which or in which the individual performs duties for the Employer, or the individual's quit, discharge, disability, retirement or death, then the individual shall not be entitled to Past Service Credits based on Past Employment with ... such Employer or any predecessor in interest of such Employer (or to any Retirement Benefits based on such Service Credits) unless:
 (1) the individual earns at least four-fifteenths of a Future Service Credit in the period beginning with such discontinuance and ending with the third Plan Year immediately following the Plan Year of such discontinuance, or
 (2) the Trustees determine that such discontinuance resulted from bankruptcy or other cessation of business of the discontinuing Employer.
 
 
 [4]
 In their opposition to the Trust Fund and Prudential's motion for summary judgment, the Stahls also requested summary judgment
 
 
 [5]
 29 U.S.C. Sec. 1022 states in relevant part:
 (a)(1) A summary plan description ... shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan....
 ....
 (b) The plan description and summary plan description shall contain the following information: ... circumstances which may result in disqualification, ineligibility, or denial or loss of benefits
 ....
 
 
 [6]
 29 C.F.R. Sec. 2520.102-2 (1987) (emphasis added) states in relevant part:
 (a) Method of presentation. The summary plan description shall be written in a manner calculated to be understood by the average plan participant and shall be sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan. In fulfilling these requirements, the plan administrator shall exercise considered judgment and discretion by taking into account such factors as the level of comprehension and education of typical participants in the plan and the complexity of the terms of the plan. Consideration of these factors will usually require the ... use of clarifying examples and illustrations, the use of clear cross references and a table of contents.
 (b) General format. The format of the summary plan description must not have the effect [of] misleading, misinforming or failing to inform participants and beneficiaries. Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant.... The description or summary of restrictive plan provisions need not be disclosed in the summary plan description in close conjunction with the description or summary of benefits, provided that adjacent to the benefit description the page on which the restrictions are described is noted.
 
 
 [7]
 ERISA expressly authorizes pension plans to adopt this rule. See 29 U.S.C. Sec. 1053(a)(3)(E)(i) (1982)
 
 
 [8]
 The federal regulation interpreting Sec. 1022(b) slightly rephrases the provision but adds nothing to it. See 29 C.F.R. Sec. 2520.102-3(1) (1987)
 
 
 [9]
 Some courts have recognized a duty to notify plan participants of events that already have jeopardized their pensions. See, e.g., Rosen v. Hotel & Restaurant Employees, 637 F.2d 592, 599-600 (3d Cir.) (trustees had to notify employees of a delinquency after it occurred), cert. denied, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981); Aitken v. IP & GCU-Employer Retirement Fund, 604 F.2d 1261, 1270 (9th Cir.1979) (trustees had to notify non-employee who was contributing that he was ineligible). The courts in these cases, however, did not mention any duty to provide individualized notice of risks that might occur in the future
 
 
 [1]
 This dissenting opinion was first circulated as a proposed majority opinion. It failed to secure another vote. It is filed as originally circulated with only those modifications necessary to convert it into a dissent
 For lack of another vote, Mr. Stahl, who worked for his employer for 20 years, will suffer a loss of nearly half of his pension benefits. Instead of the $501 per month he justifiably thought he was entitled to receive, Mr. Stahl, under the majority opinion, will receive only $267 in monthly pension benefits.
 
 
 [2]
 29 U.S.C. Sec. 1132(a) provides in pertinent part:
 A civil action may be brought--
 (1) by a participant ...
 (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
 
 
 [3]
 There is some evidence that the employees' vote to eliminate the pension plan was based on Tony's financial difficulties, which ultimately ended in the company's bankruptcy
 
 
 [4]
 Article IV, Sec. 4 of the pension plan provides:
 [I]f an individual ... ceases to be credited with Covered Hours because his Employer discontinues contributions to the Trust Fund on his behalf after February 28, 1977, for any reason other than a change in the individual's job classification, or a change in the place at which or in which the individual performs duties for the Employer, or the individual's quit, discharge, disability, retirement or death, then the individual shall not be entitled to Past Service Credits based on Past Employment with ... such Employer or any predecessor in interest of such Employer (or to any Retirement Benefits based on such Service Credits) unless:
 (1) the individual earns at least four-fifteenths of a Future Service Credit in the period beginning with such discontinuance and ending with the third Plan Year immediately following the Plan Year of such discontinuance, or
 (2) the Trustees determine that such discontinuance resulted from bankruptcy or other cessation of business of the discontinuing Employer.
 
 
 [5]
 In their opposition to the Trust Fund and Prudential's motion for summary judgment, the Stahls also requested summary judgment
 
 
 [6]
 29 U.S.C. Sec. 1022 states in relevant part:
 (a)(1) A summary plan description ... shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan....
 (b) The plan description and summary plan description shall contain the following information: ... circumstances which may result in disqualification, ineligibility, or denial or loss of benefits
 ....
 
 
 [7]
 29 C.F.R. Sec. 2520.102-2 states in relevant part:
 (a) Method of presentation. The summary plan description shall be written in a manner calculated to be understood by the average plan participant and shall be sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan. In fulfilling these requirements, the plan administrator shall exercise considered judgment and discretion by taking into account such factors as the level of comprehension and education of typical participants in the plan and the complexity of the terms of the plan. Consideration of these factors will usually require the ... use of clarifying examples and illustrations, the use of clear cross references and a table of contents.
 (b) General format. The format of the summary plan description must not have the effect [of] misleading, misinforming or failing to inform participants and beneficiaries. Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant.... The description or summary of restrictive plan provisions need not be disclosed in the summary plan description in close conjunction with the description or summary of benefits, provided that adjacent to the benefit description the page on which the restriction are described is noted.
 
 
 [8]
 Even Michael Uranga, Deputy Administrator for the plan's pension department, stated that the normal expectation was that payments would continue after expiration of a collective bargaining agreement
 
 
 [9]
 That Stahl's reliance was justified is shown by the fact that expiration of the collective bargaining agreement had never caused a change in the status quo in the past. Throughout Stahl's employment there, Tony's had continued to make payments to the pension plan between and after renewal of the collective bargaining agreement
 
 
 [10]
 29 U.S.C. Sec. 1021(a) provides in part:
 The administrator of each employee benefit plan shall cause to be furnished ... to each participant covered under the plan ...
 (1) a summary plan description described in section 1022(a)(1) of this title....