772 F.2d 1032
 1985-2 Trade Cases 66,890, 6 Employee Benefits Ca 2209
 Arthur CHAMBLESS and Mildred H. Chambless,
Plaintiffs-Appellees, Cross-Appellants,
v.
MASTERS, MATES & PILOTS PENSION PLAN, Stephen P. Maher,
Administrator of the Masters, Mates & Pilots Pension Plan,
C.J. Bracco, Richard M. Casselberry, Michael Di Prisco, E.
Gras, George Groh, Justin Gross, James R. Hammer, James J.
Hayes, Martin F. Hickey, Charles Jess, Francis E. Kyser,
Charles Landry, Orion A. Larson, Robert J. Lowen, Lloyd
Martin, J. Eric May, David Merritt, Thomas E. Murphy, Henri
L. Nereaux, William Ott, Martin Pecil, Franklin J. Riley,
Jr., William I. Ristine, A.C. Scott, Capt. John Smith,
Rupert Soriano, Ernest Swanson, Michaen Swayne, Allen
Taylor, Nicholas Telesmanic, Kenneth P. Wenthen, C.E.
Whitcomb, in their fiduciary capacity as Trustees of the
Masters, Mates & Pilots Pensions Plan,
Defendants-Appellants, Cross-Appellees,
Amerada Hess Corporation, Amoco Shipping Company, Central
Gulf Lines, Inc., American Maritime Association, National
Transport Corp., Wabash Transport, Inc., Waterman Steamship
Corporation, Maritime Services Committee, Inc.,
International Organization of Masters, Mates & Pilots,
Defendants, Cross-Appellees.
 Nos. 994, 1086, Dockets 84-7987, 84-7989.
 United States Court of Appeals,
Second Circuit.
 Argued May 20, 1985.
Decided Aug. 28, 1985.
 
 Arthur M. Wisehart, New York City (Irene M. Opsahl, John Whittlesey, Wisehart & Koch, New York City, of counsel), for plaintiffs-appellees, cross-appellants.
 Bettina B. Plevan, New York City (Eileen Reinhardt, Joseph Baumgarten, Proskauer, Rose, Goetz & Mendelsohn, New York City, of counsel), for defendants-appellants, cross-appellees.
 Burton M. Epstein, New York City (Steinberg & Tugendrajch, Hal R. Ginsburg, Levy & Tolman, New York City, of counsel), for defendant, cross-appellee Intern. Organization of Masters, Mates & Pilots.
 Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and PIERCE, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 The Masters, Mates & Pilots Pension Plan, et al. (MM & P or the Plan) appeal from an order of the United States District Court for the Southern District of New York (Carter, Judge), dated August 2, 1984, 602 F.Supp. 904, which found that plaintiff Arthur Chambless' pension benefits were improperly postponed and reduced pursuant to an arbitrary and capricious amendment to the pension plan of which he and his wife are beneficiaries. The district court declared the amendment to be a nullity.
 
 
 2
 We hold that the district court was correct in finding that the amendment in question, while not violative of section 203(a) of ERISA, 29 U.S.C. Sec. 1053(a), is arbitrary and capricious and is therefore a nullity and also that the amendment would cause an unlawful reduction of Chambless' wage-related benefit. Furthermore, in our view, the arguments made by plaintiffs in their cross appeal are without merit.
 
 
 3
 We affirm the decision of the district court.
 
 BACKGROUND
 
 4
 The Plan, established in 1955, is a multi-employer plan designed to provide pension benefits to licensed deck officers who retire from sailing in the American Merchant Marine. It is jointly administered by an equal number of employer-designated and International Organization of Masters, Mates & Pilots (Union)--designated Trustees, in accordance with section 302(c)(5) of the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 186(c)(5), and regulations adopted by the Trustees of the Plan (Plan Regulations). The daily administration of the Plan, however, has been delegated to an administrator. Stephen Maher, now Executive Director of the Plan, functioned as Administrator from 1965-81. The Administrator decides initially whether an applicant satisfies the Plan's eligibility requirements and determines the appropriate pension benefit the applicant is entitled to receive. The funds used to provide benefits under the Plan are contributed solely by the participating employers.
 
 
 5
 In order to receive pension benefits, a participant with a sufficient number of pension credits must "retire" within the meaning of the Plan Regulations. The pertinent portion of the definition of retirement in effect during the period in question herein, i.e., April 1977, as set forth in Article II-A, Section 15(a) of the Plan Regulations stated: "To be considered retired, a person must withdraw completely from any further employment, in any capacity, aboard any vessel whatsoever."
 
 
 6
 As for the amount of pension benefits to be received, Article II-A, Section 3, of the Plan Regulations, adopted as Amendment 15 in 1966 as a result of collective bargaining, provides for wage-related pension benefits based on the "average base monthly wages of the employee during the period of any 5 consecutive years within the last ten years immediately preceding the effective date of the pension, which will produce the highest average for the employee."
 
 
 7
 On August 26, 1976, the Trustees adopted Amendments 46 and 47 as new Plan Regulations (the Amendments). Amendment 46 relates to individuals who have at one time retired. It states in pertinent part:
 
 
 8
 If a Pensioner works in employment forbidden by this Section,
 
 
 9
 1. He shall not be entitled to pension benefits for any month of such employment and for six additional months, provided that the additional six month period shall not extend beyond his Normal Retirement Age ...; provided further, however, that if such employment is in the capacity of a Licensed Deck Officer on a U.S. flag ocean-going vessel employed by a company which is not a participant in the M.M. & P. Pension Plan or the MM & P/PMA Pension Plan ..., then the Pensioner shall not be entitled to pension benefits for any month of such employment nor for any months prior to such Pensioner reaching his Normal Retirement Age....
 
 
 10
 Amendment 47, on the other hand, relates to individuals prior to retirement. It states:
 
 
 11
 In the event a Participant, subsequent to his accrual of credit for 10 years of vesting service and prior to his retirement, is employed in the capacity of a Licensed Deck officer on a U.S. flag ocean going vessel employed by a company which is not a participant in the M.M. & P. Pension Plan or the MM & P/PMA Pension Plan ..., such Participant shall not be entitled to any pension benefits prior to his reaching his Normal Retirement Age, as defined in Article I, Section 13.
 
 
 12
 In 1975, the Plan had already adopted Amendment 42, pursuant to which Article I, Section 13, stated that " 'Normal Retirement Age' shall mean the age of 65, or, if later, the age of the Participant on the tenth anniversary of his participation."
 
 
 13
 As the district court noted, Amendments 46 and 47, adopted during the following year, were discussed in articles by Robert Lowen, then the Plan's Secretary-Treasurer, and Stephen Maher, the Plan Administrator, which were published in the October 1976 issue of the Plan's newspaper, the Pilot. The articles highlighted the Plan Regulations' ban on prohibited employment and discussed the meaning of the Amendments. One of the articles contained the full text of the two provisions. The December 1976 issue of the newspaper further discussed the Amendments. Copies of the newspapers were distributed at Union hiring halls, and, according to the Plan, were mailed to the homes of Union members and pension participants.
 
 
 14
 Plaintiff Chambless sailed as a member of the Union from 1944 until 1977. He worked, at various times, as a third mate, second mate, chief mate, and master. In November, 1976, Chambless applied for pension benefits, but shortly thereafter withdrew his application and continued employment aboard vessels covered by collective bargaining agreements with the Union.
 
 
 15
 On April 2, 1977, Chambless filed a second application for retirement benefits. Chambless received a letter from Maher, Administrator of the Plan, informing him of the Plan's definition of retirement. On June 30, 1977, a Plan employee wrote to Chambless, informing him that his application was being considered and that his monthly benefits would be approximately $920, presumably based on his 33 1/4 years of pension service credits as of April 2, 1977 and his average salary for his five highest salary years between 1967 and 1977.
 
 
 16
 Following an inquiry from Maher, in November 1977, Chambless informed the Plan that, between March 18, 1977 and April 1, 1977 and then again between April 4, 1977 and September 13, 1977, allegedly after asking a Union agent whether there would be any Union problem created in doing so, he had been employed as a master on vessels which did not participate in the Plan. According to Chambless, such employment was necessary as a result of the Union exerting pressure on older licensed deck officers to retire, by giving them only low paying and low grade assignments. Whereas between 1966 and 1975 Chambless had regularly received assignments as chief mate or master, subsequently, he allegedly was told to retire or to accept assignments as second or third mate.
 
 
 17
 By letters dated January 26, 1978 and January 28, 1980, Maher responded to Chambless and to his attorney stating that: 1) because Chambless had not retired under the Plan's definition of retirement, he was not eligible for a pension at that time; 2) pursuant to the definition of retirement in Article II-A of the Plan Regulations and pursuant to Amendment 47, the Plan would not pay him any pension until December 7, 1986, at which time Chambless would reach age 65, which the Plan defines as "normal retirement age"; and 3) the monthly benefits he could expect upon reaching 65 would likely be $470.
 
 
 18
 On June 24, 1980, Chambless brought this suit against the Plan, Plan Administrator Stephen Maher, the Union, the Plan's employer and Union Trustees, the Maritime Services Committee and the American Maritime Association, employer organizations that do collective bargaining for shipping companies, and six shipping companies that formerly employed Chambless, have contracts with the Union, and contribute to the Plan.
 
 
 19
 In his complaint, Chambless alleged that the Plan violated Section 203(a) of ERISA, 29 U.S.C. Sec. 1053(a), by suspending payment of his vested pension after he went to work on a non-MM & P vessel. Moreover, according to Chambless, even if the Plan had the right to suspend pension payments when a retiree returned to work, it did not have the right to continue the suspension after the Plan participant went back into retirement. In addition, Chambless asserted that the Regulations would cause a forfeiture of his benefits by reducing them from an estimated $920 per month beginning at age 55 to an estimated $470 per month, beginning at age 65.
 
 
 20
 Among other allegations, Chambless also contended that: Amendment 47, by discriminating against Plan participants who worked on non-MM & P vessels, was punitive and arbitrary and capricious and therefore violated the trustees' fiduciary duties; the selection of age 65 for normal retirement age was a sham; at no time before he took employment on a non-MM & P vessel did the Plan or Union notify him of the effect of Amendment 47 on participants who took such employment; defendants inadequately reviewed his retirement application; the Plan improperly withheld information from him; defendants conspired in restraint of trade in violation of the Sherman Act; defendants, because of the assurances they allegedly gave him about accepting employment on non-MM & P vessels, were estopped from denying him benefits; the Union had breached its duty of fair representation by discriminating against senior seamen; and the plaintiffs had suffered emotional distress as a result of defendants' actions.
 
 
 21
 Chambless sought payment of his pension benefits retroactive to May 1, 1977, damages of $100 per day for the defendants' failure to provide him with certain pension information, treble antitrust damages, and punitive damages, costs, and attorneys' fees.
 
 
 22
 By opinion dated September 14, 1983, 571 F.Supp. 1430 the district court granted defendants' motion for summary judgment on the following claims made by Chambless: that the Plan's review of his application was inadequate; that defendants were guilty of violating the Sherman Act; that the Plan improperly withheld information from him; that the selection of age 65 as the normal retirement age was a sham; and that defendants were estopped from suspending his benefits.
 
 
 23
 As for Chambless' claim that his benefits were forfeited by reducing them from $920 a month to $470 a month, the district court held that Chambless has no vested right to a $920 a month pension and that Amendment 47 did not violate the nonforfeitability requirements of ERISA. The court did find, however, that there was a dispute over the material issue of whether the provisions which caused Chambless' pension to be reduced were arbitrary and capricious and, therefore, the court denied summary judgment on this issue.
 
 
 24
 Similarly, as for Chambless' argument that he did not receive notice of the Amendment and its effect, the district court held that there was a dispute over the material issue of whether the Union took reasonable steps to ensure that Chambless was notified after the passage of Amendments 46 and 47 and before he took work prohibited under those Amendments. The court therefore also denied summary judgment on this issue.
 
 
 25
 At trial, a jury was empanelled to consider the claims for breach of the duty of fair representation, emotional distress, and compensatory and punitive damages. At the close of the plaintiffs' case, these claims were taken from the jury, dismissed by the court, and the jury was discharged.
 
 
 26
 The only issue remaining for determination was whether the forfeiture of Chambless' pension benefits until age 65 was arbitrary and capricious. Finding that the regulation pursuant to which Chambless' benefits were reduced "is not in the interest of plan participants or their beneficiaries and is not necessary to maintain the financial integrity of the fund," Judge Carter, by order dated October 29, 1984, held that Amendment 47, as applied to Chambless, was arbitrary and capricious and ordered the Trustees to treat Chambless' application as if it had been made in 1977 and to grant him a wage-related pension based on his 1967-77 employment record, provided he retired and filed for benefits within six months of the date of the decision by the district court or within six months of a determination by the Court of Appeals, if the decision were appealed.
 
 
 27
 On appeal, the Plan contends that: 1) Amendment 47 is not arbitrary and capricious and therefore should not have been declared a nullity; 2) Amendment 47 did not cause an unlawful reduction of Chambless' wage-related benefit; and 3) the Plan gave adequate notice of the Amendment. Chambless and his wife cross appeal, contending that: 1) Amendment 47 is not only arbitrary and capricious but also violates section 203(a) of ERISA, 29 U.S.C. Sec. 1053(a) which prohibits forfeiture of all vested pension benefits at normal retirement age; 2) the Plan should be estopped from not paying Chambless the pension benefits he would have received had he retired in 1977; 3) the district court erred in dismissing his antitrust claim against defendant shipping companies; 4) the district court erred in dismissing the plaintiffs' claims for intentional infliction of emotional distress; 5) the district court erred by not awarding Chambless benefits retroactive to May 1, 1977 and by conditioning its judgment upon his retirement and filing for benefits within six months of the date of the court's decision; and 6) the district court erred in dismissing the plaintiffs' claim for punitive damages.
 
 
 28
 Finding that Amendment 47 was arbitrary and capricious, the district court declared the Amendment to be a nullity. See Sharron v. Amalgamated Insurance Agency Services, Inc., 704 F.2d 562, 564 (11th Cir.1983). We agree with this determination.
 
 DISCUSSION
 
 29
 Section 404(a)(1) of ERISA, 29 U.S.C. Sec. 1104(a)(1), states that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries...." The Plan contends that Amendment 47 is justifiable, pursuant to Sec. 1104(a)(1), in that it was adopted to enhance the financial integrity of the Plan. According to the Plan, the purpose of Amendment 47 is to preserve and enhance the corpus of the Plan by discouraging participants from making their services available to non-contributing employers. Also, the Plan purportedly believed that the Amendment would induce non-contributing employers to participate in the Plan in order to obtain access to trained licensed deck officers and would thereby decrease the claimed unfunded liability of the Plan. We find the Plan's argument unpersuasive.
 
 
 30
 First, the Plan failed to substantiate its claim of financial necessity and even failed to assert that alternative solutions were considered. See Central Tool Company v. International Association of Machinists National Pension Fund, Benefit Plan A, 523 F.Supp. 812, 817-18 (D.D.C.1981). Second, the Plan's claim of financial necessity was unsupported by any actuarial data. See Elser v. I.A.M. National Pension Fund, 684 F.2d 648, 657 (9th Cir.1982), cert. denied, --- U.S. ----, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983); Pompano v. Michael Schiavone & Sons, Inc., 680 F.2d 911, 914-15 (2d Cir.), cert. denied, 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982). The Plan points to an actuarial valuation by its consultants for the year ending December 31, 1975. According to Chambless, and not contested by the Plan, however, this valuation was not even transmitted to the Plan until February 22, 1977, approximately six months after the Trustees' action that was assertedly "based in part" upon it. Moreover, the Plan's concern for its financial stability is undermined by a letter written by defendant Maher, the Plan Administrator, to participants only a month before Amendments 46 and 47 were adopted, in which Maher stated that the Plan was "financially sound." Third, as the district court noted, Amendment 47 was of Union origin, drafted by Union counsel, and the record is devoid of evidence showing that the Amendment benefited the Plan or its participants. Rather, evidence was introduced demonstrating that employer Trustees supported the Amendment to encourage participants to remain working as long as possible for employers who had contributed to the Plan, so that the employers could get their money's worth, whereas Union Trustees supported the Amendment to attract younger licensed deck officers. Neither the employer nor Union Trustees seemed to support the Amendment to enhance the financial integrity of the Plan itself. Fourth, we note that in addressing a class action challenge to companion Amendment 46, a district court in Deak v. Masters, Mates & Pilots Pension Plan, No. 79-190, slip op. (M.D.Fla. June 4, 1984), determined that the Plan's assertions regarding the financial purpose of Amendment 46 "d[id] not mesh with the bulk of the evidence and inferences indicative of their intentions at the time of actual passage." Id. at 16. Given the basic similarities between Amendments 46 and 47 and the fact that they were adopted at the same time, we conclude that the district court herein was correct in finding that Amendment 47 also was not adopted to enhance the financial integrity of the Plan or to benefit the Plan participants and is thus arbitrary and capricious.
 
 
 31
 The district court also concluded that, as to one in the position of plaintiff Chambless, the combined effect of Amendment 47 and Article II-A, Section 3 of the Plan Regulations (the wage-related provision) was arbitrary and capricious.
 
 
 32
 Article II-A, Section 3, of the Plan Regulations sets forth the monthly wage-related pension benefit as a percentage of pay and defines pay as "the average base monthly wages of the employee during the period of any 5 consecutive years within the last ten years immediately preceding the effective date of the pension...." (emphasis added). Furthermore, according to this wage-related provision, a participant with thirty years of credit is to receive monthly pension benefits of $470 or 60% of pay, whichever is higher. Since the base years for calculating the wage-related pension are the ten years immediately prior to retirement and not necessarily the last ten years in covered employment, the ten years in question in Chambless' situation are the years during which he was employed at a low rate of pay on non-MM & P vessels. Since 60% of Chambless' pay in the 5 highest paying years within the statutory period would be less than $470, his monthly pension would thus be $470. Consequently, by postponing benefits until age 65, pursuant to Amendment 47, and then utilizing the wage-related formula to calculate those benefits, the amount of Chambless' pension was significantly reduced.
 
 
 33
 We agree with the district court that, by itself, Article II-A, Section 3, the wage-related provision, might not be arbitrary and capricious with regard to participants who apply for benefits immediately upon retiring and who do not take any other employment, and similarly with regard to participants who retire from covered employment, apply for a pension and then take work in a different industry. When Article II-A, Section 3 is applied in conjunction with Amendment 47, however, as occurred here, we believe it is arbitrary and capricious. Here, the combined effect of Amendment 47 and the wage-related provision essentially meant that Chambless, by accepting other work with a competitor who did not participate in the Plan, even for the purpose of avoiding the low paying and low grade assignments the Union was giving to older licensed deck officers, was placed in the position of postponing his pension until age 65 and thus could not have sought to fully retire beforehand, and he also was effectively reducing his pension benefit. In our view, the district court correctly held that no forfeiture of benefits can be exacted from an employee for attempting to improve his position by accepting work with a competitor of his employer. Hummel v. S.E. Rykoff & Co., 634 F.2d 446, 452 (9th Cir.1980); Westwood Chemical Co. v. Kulick, 570 F.Supp. 1032, 1041-42 (S.D.N.Y.1983).
 
 
 34
 Moreover, contrary to the Plan's contention, this Court's decision in Morse v. Stanley, 732 F.2d 1139 (2d Cir.1984), stands for the proposition that suspension of benefits is permissible only if those benefits are not thereby reduced. As we stated, "[c]onsidering that ... the plaintiffs ... will each receive their vested benefits with interest upon reaching their normal retirement age (65), their contention that the Trustees acted arbitrarily or in bad faith in denying them accelerated distributions is without merit." Id. at 1144. Defendants' reliance on the Morse decision is misplaced.
 
 
 35
 Furthermore, even if the Plan is correct in maintaining that the wage-related provision of the Plan Regulations, since it is the result of a collective bargaining agreement, may not be found to be arbitrary and capricious in itself, United Mine Workers of America Health & Retirement Funds v. Robinson, 455 U.S. 562, 576, 102 S.Ct. 1226, 1234, 71 L.Ed.2d 419 (1982), as the district court stated, it is not the wage-related provision which is being contested herein. Moreover, as Chambless notes, Robinson is limited to a situation in which the provision in question is both an outgrowth of a collective bargaining agreement and not otherwise violative of federal law or policy. Id. at 575, 102 S.Ct. at 1234. Here, the wage-related provision, Article II-A, Section 3, as applied to the present circumstances, i.e., combined with Amendment 47, would violate the Trustees' fiduciary duty to act solely in the interest of the participants and beneficiaries, as required by ERISA, 29 U.S.C. Sec. 1104(a). For the foregoing reasons, we agree with the district court's finding that Amendment 47 is arbitrary and capricious and is therefore a nullity.
 
 
 36
 With regard to notice, the district court held that both the method of distributing notice about the impact of the Amendment and the content of the notice were inadequate.
 
 
 37
 Regarding the adequacy of distributing information about Amendment 47, while defendants contend that the newspaper was mailed to all participants at their homes, the district court found that the newspapers discussing the Amendment were merely left at the Union hiring hall and were not mailed directly to Plan participants. The district court therefore held that such distribution was inadequate.
 
 
 38
 We believe that, even if distribution of the newspaper were adequate, the content of the notice regarding Amendment 47 was inadequate. We are unpersuaded by defendants' contention that because the method of calculating wage-related benefits had not changed since its introduction in 1968 and because Chambless received notice of that method at that time, no new notice by the Plan was required. Rather, as the district court found, neither of the publications regarding Amendment 47 explained the full import of the interaction of the wage-related provision and the Amendment for someone in Chambless' position. Thus, in our view, the notice was insufficient to satisfy the requirements of ERISA, 29 U.S.C. Sec. 1022(a) and (b) and Sec. 1024(b)(1) (plans must furnish to participants clear, timely explanations of "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits.").
 
 
 39
 In his cross-appeal, Chambless makes several claims. First, he contends that the suspension of his pension until age 65 violates section 203(a) of ERISA, 29 U.S.C. Sec. 1053(a), which states in pertinent part: "Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age...." According to Chambless, he is entitled to a "normal pension," without regard to age, since he has over twenty years of pension service credits. We find Chambless' argument to be without merit. While prior to 1975, age was not a factor in determining entitlement to pension benefits, in December 1975, the Plan adopted Amendment 42, which tracks the language of ERISA and pursuant to which Article I, Section 13 states that " 'Normal Retirement Age' shall mean the age of 65, or, if later, the age of the Participant on the tenth anniversary of his participation."In addition, we have held that postponement of retirement benefits until age 65 need not constitute an unlawful forfeiture, violative of ERISA. Riley v. MEBA Pension Trust, 452 F.Supp. 117, 120 (S.D.N.Y.), aff'd, 586 F.2d 968 (2d Cir.1978) ("The Act, on its face, requires only that pension benefits be nonforfeitable upon attainment of normal retirement age, in this case, age sixty-five. The Act, therefore, gives plaintiff no vested right to receive benefits until he reaches that age."); see Fine v. Semet, 699 F.2d 1091, 1093 (11th Cir.1983); Hurn v. Retirement Fund Trust, 648 F.2d 1252, 1253-54 (9th Cir.1981). Based on the above, we conclude that, since Chambless has not reached age 65, suspension of his benefits violates neither ERISA nor the Plan itself.
 
 
 40
 Chambless next maintains, in his cross-appeal, that the Plan should be estopped from not paying him the pension benefits he would have received had he retired in 1977 and not worked for non-MM & P vessels. Chambless alleges that it was only after asking a Union agent whether it would be permissible for him to do so, that he took an assignment as master on a vessel that did not participate in the Plan.
 
 
 41
 In our view, Chambless' allegations regarding representations made to him by a Union representative are insufficient to support a claim of estoppel against the Plan. We have held that because "[t]he actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan," Phillips v. Kennedy, 542 F.2d 52, 55 n. 8 (8th Cir.1976) (quoted in Haeberle v. Board of Trustees of Buffalo Carpenters Health-Care Funds, 624 F.2d 1132, 1139 (2d Cir.1980)), "courts have been reluctant to apply the estoppel doctrine to require the payment of pension funds." Haeberle, 624 F.2d at 1139. As the district court stated herein, "[i]f such funds are too vital to allow plan trustees to obligate the fund through their representations, a fortiori union officials--who are not as clearly identified with pension funds as are trustees--should not be permitted to commit the funds to persons not entitled to them." Chambless v. Masters, Mates & Pilots Pension Plan, 571 F.Supp. 1430, 1452 (S.D.N.Y.1983); see Galvez v. Local 804 Welfare Trust Fund, 543 F.Supp. 316, 318 (E.D.N.Y.1982). We agree with the position articulated in Chamberlin v. Bakery & Confectionery Union Pension Fund, 99 L.R.R.M. 3176 (N.D.Cal.1977), where the court stated:
 
 
 42
 To permit ... a single oral statement by a union business agent to obligate the trust to provide benefits to persons not otherwise entitled to them would seriously erode the requirement that the fund be administered by representatives of both the employe[r] and the employees solely for the benefit of employees of the contributing employer. 29 U.S.C. Sec. 186(c)(5). Any such erosion can create a loophole that would enable the unscrupulous to divert funds away from the proper parties....
 
 
 43
 Id. at 3180.
 
 
 44
 Furthermore, as the district court noted, Chambless admits that he never discussed with any Union representative the specific effect that employment on non-MM & P vessels would have on his pension, as opposed to whether the Union itself would object to such employment. 571 F.Supp. at 1451. Rather, according to Chambless' testimony, the Union representative merely told Chambless that "lots of our members does [sic] that [i.e., work on non-MM & P vessels].... Don't worry about it.... You go right ahead if you want to go out there and work...."
 
 
 45
 Based on the above, we believe that the district court correctly granted summary judgment dismissing the claim that the Plan is estopped from suspending Chambless' benefits.
 
 
 46
 Chambless' third contention in his cross-appeal is that the district court erred in dismissing the antitrust claim against the shipping companies. According to Chambless, the suspension of pension benefits until normal retirement age under Amendment 47 and the decrease in those benefits created "a hindrance and interference with the ability of licensed deck officers to market their skill," thereby creating an antitrust violation under the Sherman Act, 15 U.S.C. Secs. 1-2.
 
 
 47
 The Supreme Court has held that, even if there has been a violation of the antitrust laws, an award of treble damages is proper only when there has been an antitrust injury. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). Chambless has not made clear exactly what his antitrust injury is. To the extent that Chambless' antitrust claim is based on a limiting of employment opportunities, he can claim no direct injury in light of his successful continued employment on non-MM & P vessels. To the extent that the claim is based on diminished retirement benefits, it is essentially an ERISA matter. See Laurie Visual Etudes, Inc. v. Chesebrough-Ponds, Inc., 473 F.Supp. 951, 960 (S.D.N.Y.1979). We therefore hold that Chambless has not shown the requisite antitrust injury.
 
 
 48
 Chambless' fourth contention in his cross-appeal is that the district court erred in dismissing the plaintiffs' claims for intentional infliction of emotional distress against the Plan and the Union. We believe these claims were properly dismissed. With regard to the claim by Chambless' spouse, we believe that the district court did not abuse its discretion in finding that there was insufficient evidence to raise a jury question. With regard to Chambless' own action to recover damages based upon alleged emotional distress, we believe that the claim was properly dismissed because of the absence of any evidence to support his claim.
 
 
 49
 Chambless' fifth contention in his cross-appeal is that, based on the district court's findings, he should have been awarded benefits retroactive to May 1, 1977 and also that the district court erred in conditioning its judgment upon his retiring and filing for benefits within six months of the date of the court's decision. We agree with the district court. Regarding retroactivity, as the Plan states, because Chambless has worked continuously in the maritime industry since May 1, 1977, and has not "withdraw[n] completely from any ... employment ... aboard any vessel whatsoever," as required by Article II-A, Section 15(a)'s definition of retirement, Chambless has not been eligible to receive a pension. We have upheld rules for suspending benefits of individuals who have not retired within the meaning of the Regulations. Riley, 570 F.2d at 412. We therefore believe that the district court was correct in not awarding retroactive benefits but instead requiring the Plan to pay Chambless, upon his retirement, the monthly amount he would have received had he retired in 1977.
 
 
 50
 Regarding the six month proviso, we also agree with the district court. Even if Amendment 47 is a nullity, both the wage-related provision, Article II-A, Section 3, and the definition of retirement, Article II-A, Section 15(a), of which Chambless was on notice in 1977 when he applied for benefits, remain intact. Therefore, when Chambless applied for benefits in 1977, he is deemed to have known that: the amount of his retirement benefit would be based upon his salary during the ten year period immediately prior to his retirement; if he continued to work thereafter on non-MM & P vessels, his retirement date would continue to advance; and the amount of his pension probably would be reduced by virtue of adding to the ten year period an increasing number of years of uncovered and lower paying employment. Since the district court decision gives Chambless the advantage of figuring his wage-related benefits as of 1977, i.e., based upon his last years of higher paying covered employment, and not upon the ten year period immediately prior to his retirement, we believe it is reasonable for this advantage to be conditioned upon Chambless' ceasing to work and filing for benefits within six months of a decision rendered by this Court.
 
 
 51
 Finally, the plaintiffs contend that the district court erred in dismissing their claim for punitive damages. We disagree. The issue of the availability of punitive damages under ERISA is now before the Supreme Court in Russell v. Massachusetts Mutual Life Insurance Co., 722 F.2d 482 (9th Cir.1983), cert. granted, --- U.S. ----, 105 S.Ct. 81, 83 L.Ed.2d 29 (1984). As defendants argue, even where courts have concluded that punitive damages are available under ERISA, they have required a showing of wanton or malicious conduct, see, e.g., id. at 492; Korn v. Levine Bros. Iron Works Corp., 574 F.Supp. 836, 843 (S.D.N.Y.1983), of which there is no evidence herein. Indeed, the district court stated that it did "not believe that the trustees willfully withheld information from Chambless or other participants as to the effective reach and full impact of Amendment 47." Furthermore, we note that in Deak, slip op. at 20, in which related Amendment 46 was at issue, the court held that the Trustees' actions were not so " 'malicious, flagrant or outrageous,' as to justify the imposition of punitive damages." (citations omitted). In our view, the district court herein was correct in making a similar finding with regard to Amendment 47 and in dismissing the plaintiffs' claims for punitive damages.
 
 
 52
 For the foregoing reasons, we affirm the decision of the district court in all respects and remand for a determination of the benefits which Chambless would have received in 1977.