**Philip SISKIND, et al., Plaintiffs,**

v.

**The SPERRY RETIREMENT PROGRAM, and Unysis (formerly known as Burroughs/Sperry Corporation) and the Sperry Corporation Employee Benefits Executive Committee, as fiduciaries of the Sperry Retirement Program, Defendants.**

**No. 86 Civ. 9014 (VLB).**

United States District Court,
S.D. New York.

April 13, 1992.

Sarah E. Siskind, Vladeck, Waldman, Elias & Engelhard, PC, New York City, Davis, Barnhill & Galland, PC, Madison, Wis., for plaintiffs.

Robert E. DeRight, Jr., Epstein Becker & Green, PC, New York City, Henry Rose, Epstein Becker & Green, PC, Washington, D.C., for defendants.

MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I

ERISA (29 U.S.C. § 1102(b)) requires that every employee benefit plan "provide

a procedure for amending such plan, and for identifying the persons who have authority to amend the plan ..."

This case involves an employee pension plan in which a committee of officers of the employer was designated as the fiduciary administrator of the plan. This committee was also identified and authorized by the terms of the plan as the amending authority. The plan provides that "[a]ny discretionary actions taken under the Program by the Committee with respect to the classification of employees, Members, contributions or benefits shall be uniform in nature and applicable to all persons similarly situated," and permits the Committee named as fiduciary under the Plan to amend it.

The controversy before me concerns whether such a Committee, specifically designated in the plan as the § 1102(b)(3) amending authority, was justified under ERISA in delegating to the employer decisions which led to offers to some but not to all employees of optional accelerated retirement benefits under the plan. The parties have made cross-motions for summary judgment and at argument submitted the case for plenary decision upon submission. The operative facts are not in dispute. This Memorandum Order reflects my findings of fact and conclusions of law.

I find the conduct of the Committee violative of ERISA.

## II

Plaintiffs, 41 former and present employees of defendant UNISYS, allege that the Sperry Employee Benefits Executive Committee violated ERISA, 29 U.S.C. § 1104, when the Committee amended Sperry's ERISA Plan to include an enhanced early retirement program, authorizing Sperry's management to decide which business units would be included in the program. Plaintiffs have also named as defendants the

Sperry Corporation and UNISYS, the present owner of Sperry.[1]

The pension plan involved (the "Plan") was established and maintained by the Sperry Corporation. In 1986 Sperry and the Burroughs Corporation merged and formed UNISYS which became the Plan's sole sponsor. The Plan provided for the creation of an Employee Benefits Executive Committee (the "Committee") which consisted of at least three members of senior management appointed by the Board of Directors. The Committee was the "named fiduciary" of the Plan pursuant to ERISA § 402(a). See Article 4.1. Under the Plan, the Committee was empowered to make and enforce rules and regulations, resolve eligibility issues, and to pay benefits. Plan, Article 4.5.

Article 4.5 provided that "[a]ny discretionary actions taken under the Program by the Committee with respect to the classification of employees, Members, contributions or benefits shall be uniform in nature and applicable to all persons similarly situated." Under Article A5.1: "... the Committee may ... modify or amend in whole or in part any of the provisions of Part A [of the Plan]." No other party was given power to amend the Plan. Article 4.5 was never amended.

Article A5.1 also stated that "any such amendment which would result in an increased cost of more than $3 million per year shall be subject to the approval of the Company's Board of Directors."

After the Sperry and Burroughs Corporations merged in 1986 to form UNISYS, UNISYS decided that it would reduce the size of its work force and divest itself of certain divisions. As part of this decision, the corporation proposed to the Committee a Plan amendment which would institute an enhanced early retirement program, named the Special Voluntary Retirement Program

---

1. The following threshold matters are not in dispute: that this court has jurisdiction under 28 U.S.C. § 1331, that the Plan is an employee benefit plan under ERISA pursuant to 29 U.S.C. § 1002(3), that UNYSIS has assumed the former functions, duties and obligations of Sperry, the original plan sponsor insofar as relevant here (for this reason both entities will be referred to collectively hereinafter as "Sperry"), that plaintiffs were employees of the Sperry Corporation and participants in the Plan under 29 U.S.C. § 1002(7), and that all other prerequisites for relief have been met except the key issue of whether defendants' conduct in implementing the Plan was violative of applicable law.

(the "SVRP" or "Program"). Coverage of the SVRP would be company-wide, "with organizational exclusions based on business reasons" to be determined by management. SVRP provided enhanced benefits to employees who were at least 55 years old, had 15 years of service, retired before November 30, 1986, and were employed in other facilities than those which the management of the corporation would decide to exclude. The Committee followed management's recommendation and amended the Plan by adopting the SVRP.

Soon after adoption of SVRP, UNISYS management announced several exclusions from the Program. In most cases, management decided not to extend the SVRP to employees at a facility or in an activity with respect to which UNISYS was considering divestment. In view of these plans, management decided that early retirement of employees at those facilities would decrease the value of the facilities, although early retirement at UNYSIS' retained facilities was paradoxically viewed as beneficial to profitability.

Excluded employees included those working at the Flight Simulation Systems Division in Reston, Virginia, and the Microwave and Support Systems Division in Clearwater, Florida. Employees at other facilities, such as the Surveillance and Fire Control Division in Great Neck, New York, were offered a modified SVRP early retirement program made available only to employees who were over 60 years of age and had 30 years of experience.

Plaintiffs are all former or present UNISYS employees who were excluded from the SVRP.

### III

Plaintiffs allege that the Committee violated ERISA § 404, 29 U.S.C. § 1104, which imposes certain fiduciary duties on the "named fiduciaries" of a given plan. Plaintiffs seek relief pursuant to ERISA § 409, 29 U.S.C. § 1109, in the form of retroactive inclusion in the SVRP.[2]

Defendants' principal arguments may be summarized as follows:

(1) the amending power granted the Committee under the plan authorizes its challenged actions;

(2) plaintiffs lack standing because they have not suffered any injury, despite their exclusion from accelerated retirement benefits;[3]

(3) plaintiffs were not similarly situated to employees at facilities included in the SVRP;[4] and

(4) that determining the coverage of an aspect of the Plan is a design function of the Committee not measured by fiduciary standards, at least absent resulting denial of vested or other reasonably expected benefits, which plaintiffs concede did not occur here.

---

**2.** I have not considered the question—probably because it has not been presented in this wise by the parties—of whether in light of the preemption of state law in ERISA matters, the Plan constituted a contract enforceable as such under federal common law, either directly or on a third party beneficiary basis.

**3.** Defendants argue that plaintiffs will receive the non-SVRP benefits otherwise available to them and are not in a worse position than prior to the SVRP. This ignores the loss of the opportunity to retire early if desired on more favorable terms, or the loss of those more favorable terms in the case of employees who did retire but were excluded from SVRP.

    Defendants also suggest that plaintiffs suffered no harm from defendants' alleged breach since even if the Committee had made the SVRP applicable to all UNISYS employees, the amendment would not have been effective until management approved it since the proposed amendment would involve an increased cost of over $3 million per year. If management had rejected the SVRP under the $3 million provision, this would have retained the funds expended for the Program in the pension plan fund and thus enhanced the prospects of the plaintiffs for greater retirement payments in the long run. Exclusion from the additional benefits offered is an unfavorable event for plaintiffs regardless of management's choice to veto or not to veto a Plan-wide Program.

**4.** As discussed below, the dissimilarity did not relate to employment, pension entitlement or other matters relevant to the Plan, but to management discretion exercised for extraneous reasons under the unauthorized delegation of amending power granted it by the Committee. Recognition of artificially created dissimilarities would permit favoritism entirely contrary to the text of the Plan.

Defendants rely on decisions holding that definition of the boundaries of a purely private plan—the design of the plan—is not subject to fiduciary standards under ERISA, since otherwise the private nature of the decisions as to what coverage to offer would be impaired. See *Landry v. Air Line Pilots Ass'n Intern.*, 901 F.2d 404, 414 (5th Cir.1990) ("Decisions as to whether or when to establish a plan, or how to design a plan, are not subject to any ERISA fiduciary obligation"); *United Independent Flight Officers v. United Air Lines*, 756 F.2d 1262, 1268 (7th Cir.1985). Defendants suggest that the principle set forth in these cases would have equal application to an amended definition of these boundaries.

An opinion letter issued by the Department of Labor, entitled *Fiduciary Responsibility and Plan Terminations*, 13 Pens. Rep. (BNA) 472 (Mar. 13, 1986) stated that: "... in light of the voluntary nature of the private pension system governed by ERISA, the Department has concluded that there is a class of discretionary activities which relate to the formation, rather than the management of plans. These so-called 'settlor' functions include decisions relating to the establishment, termination and design of plans and are not fiduciary activities subject to Title I of ERISA.... [F]iduciary activities governed by Title I of ERISA are not restricted to activities undertaken by fiduciaries denominated as such. Rather, as a general matter, ERISA establishes a functional approach to determine whether an activity is fiduciary in nature."

The cited decisions and the Labor Department letter, however, did not deal with the effect of violations of the unamended terms of a Plan nor the delegation of further amending power to a party not named under 29 U.S.C. § 1102(b)(3).

The statutory requirement of designation of the locus of amending power is not a mere formality. Clear identification of the source of amendments is crucial so that employees will not become lost in referrals from one person or body to another if they seek to determine how to argue to—or

challenge the decisions of—the person or entity making decisions about retirement benefits, which may indeed, in some instances, be vested under the Act (29 U.S.C. § 1053).

Adherence to the reasonably foreseeable interpretations of the language of plan provisions is also important to protect legitimate expectations created by a plan, which would in other contexts be protected by contract law or promissory estoppel concepts. A more sophisticated party must, in particular, turn square corners to avoid misleading less legally knowledgeable parties relying on documents provided to them—especially where required by statute to be made available. This is particularly true where the documents contain provisions—like the Plan provision in this case for uniform treatment—which appear on their face to contain no traps and to be written in plain language having a plain meaning.

Counterintuitive technical interpretations which defeat expectations created by the language of such documents run counter to the intended purpose of such documents, and counter to the goals of a functioning market economy which are facilitated by confidence in expectations grounded in written arrangements. See generally *Northwestern National Insurance Co. v. Donovan*, 916 F.2d 372 (7th Cir.1990).

Disregard of these principles subverts the confidence at the root of a functioning open market economy in which choice— e.g., in this instance the employee's choice of the employer for whom to work—is based on fidelity to the "ink" of magisterially promulgated pronouncements. Especially is this so when the pronouncements are required by statute.

ERISA requires every employee benefit plan to be "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). Adherence to formalities under the instrument must be sufficient for a reasonable person to "ascertain the intended benefits ... and procedures for receiving benefits," *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982), quoted in *Frank v. Colt Industries*, 910 F.2d 90, 97

(3d Cir.1990). To treat a plan committee as not bound by such an instrument's plain meaning because it has the power to amend the provision would be akin to treating legislators as not bound by statutes because they have authority to amend those statutes.

In this case a deeper issue is also involved. The uniformity provision—requiring classification of employees, members, contributions and benefits to be uniform in nature and applicable to all persons similarly situated—was not amended by the Committee. Nor was such an amendment likely: an amendment would constitute a public statement by employers or pension administrators they intended to act in contravention to what was stated in the provision prior to amendment. It is certainly true that the uniformity provision was adopted voluntarily, and that its adoption was a design function, but the provision reflects a public expectation, relevant in the marketplace, that power over others should be exercised by the institutional sector on a nondiscriminatory basis.

Interpretation of such a uniformity provision in accordance with its terms—as they would be viewed by an ordinary person or employee—does not impose a straitjacket on private pension plan design, nor does it impose fiduciary duties with respect to design functions which are proscribed by the Labor Department letter or the cases cited above. To the contrary, notice which permits the marketplace to function pursuant to the goals of ERISA is all that is required. In this case the Committee which was the plan administrator with amending authority could, for example, have amended the uniformity provision (Article 4.5) to give advance notice to the employees that a certain type of distinction defined in the amendment would not be regarded as a

violation of Article 4.5.[5] No amendment to Article 4.5 was made here, nor was any amendment adopted defining the scope of coverage of the SVRP Program, and thus no notice in the Plan was given at any time.

Notice to employees of changes which may affect their pension benefits is an important objective of ERISA; it is mandated by 29 U.S.C. § 1022(a) and (b) and § 1024(b)(1). ERISA is violated where "the notice is insufficient to satisfy the requirements" of those sections, which embrace "clear, timely explanations" of circumstances which may result in loss of benefits. *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1040 (2d Cir.1985).[6]

If the Committee had deleted or modified the uniformity provision of Article 4.5, employees particularly concerned with their retirement prospects might have left to work for a competitor or other employer, an opportunity important to the functioning of the marketplace. Ability, once notice is given, to shift jobs when pension options become unfavorable is an important value protected under ERISA:

> "[The employee].... was placed in the position of postponing his pension until age 65 and thus could not have sought to fully retire beforehand.... In our view, the district court correctly held that no forfeiture of benefits can be exacted from an employee for attempting to improve his position by accepting work with a competitor of his employer [citing cases]." *Chambless, supra* at 1039.

Article 4.5 "contains a promise" to employees of equality of treatment, as pointed out in *Frank v. Colt Industries*, 910 F.2d 90, 96 n 3 (3d Cir.1990). In dealing with employees, benefit plan administrators are required to give "words their ordinary meaning" as they would be construed by

---

**5.** Thus this case does not present the question of what, if any, *advance* notice of major plan design changes may be required under ERISA, in order to permit employees to make their plans concerning employment based on prior knowledge of a pension plan's design. See *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1039 (2d Cir.1985).

**6.** While *Chambless* involved a multi-employer plan, a fact defendants claim is relevant to its implications concerning the scope of fiduciary duties imposed by the statute itself directly on decisionmaking by plan administrators, the distinction is not pertinent to the need for compliance with Plan provisions, the *notice* requirements of ERISA, or the question of amendments delegating further powers of amendment.

"any reasonable employee," without imposing an arcane interpretation which could be surprising to a lay person relying on the document. Id. at 96.

Plain interpretation of plain language is particularly important to employees who are the contemplated recipients of the information. See Proceedings in Honor of Hon. Paul R. Hays, 635 F.2d at LXXI (Remarks of Hon. Henry Friendly, quoting Hays, J., dissenting in *NLRB v. Golub Corp.*, 388 F.2d 921, 929 (2d Cir. [1967])).

The Third Circuit takes the view, expressed in *Trenton v. Scott Paper Co.*, 832 F.2d 806, 810 (3d Cir.1987) that "employees at over-staffed plants and employees at 'lean' plants are not similarly situated." This formulation lends itself to surprises for the unwary. It is contrary to the approach taken by the Second Circuit in *Chambless,* which teaches that realistic notice of changes in pension benefits and how they are to be administered must be given under ERISA. In *Trenton* the Third Circuit, responding to a complaint that the retirement board involved in that case had slavishly followed the employer's dictates, took the position that pension plan administers were obligated to accept employer decisions as to which employees were eligible. *Trenton* did not, however, as does this case, involve delegation of amendment authority to parties not named under 29 U.S.C. § 1102(b)(3). Such delegation deprives employees of the statutory right to know who is the amending authority.

The Committee violated ERISA provisions in at least two particulars. Charged by the Plan itself with the exclusive statutory power to amend the Plan, it abandoned its duty to structure the plan through its own amending processes and delegated to management the power to determine eligibility for benefits. It permitted the amendment by management to violate the Magna Carta or polestar of the structure—the provisions of Article 4.5 of the Plan (which the Committee was bound to follow so long as it was not amended) to the effect that all discretionary decisions "be uniform in nature and applicable to all persons similarly situated."

The delegation of the power to amend, not provided for in the Plan, violated not only the Plan itself, but also the ERISA requirement that the situs of amendment power be identified in the Plan. The Plan established the Committee; designated the Committee as the "named fiduciary"; and gave it the sole power to amend the plan, subject to management's veto power over amendments with an annual cost of over $3 million. No other party was given the power to amend the Plan.

The Committee's duties remained governed by the *unamended* Article 4.5 which it violated (see 29 U.S.C. § 1102(b)(3)). The Committee itself did not redraw coverage boundaries for aspects of the Plan, but improperly delegated that function.

## IV

Summary judgment is granted to plaintiffs on the merits of their claim that the Committee violated plaintiffs' rights under ERISA. Plaintiff's counsel is directed to submit, on notice to defense counsel, within 30 days, a proposed judgment.

SO ORDERED.