John POCHODAY, Plaintiff–Appellant,

v.

BUILDING SERVICE 32B–J PENSION FUND, and Trustees and Administrators, Building Service 32B–J Pension Fund, Defendants–Appellees.

No. 00–9097.

United States Court of Appeals, Second Circuit.

March 2, 2001.

Donna T.P. Stelmach, Morristown, NJ, for appellant.

Michael Geffner, Raab, Sturm & Goldman, LLP, New York, NY, for appellees.

Present JACOBS, CALABRESI, and SOTOMAYOR, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment be AFFIRMED.

Plaintiff-appellant John Pochoday appeals from the judgment of the United States District Court for the Southern District of New York (Cedarbaum, J.), after a trial on the papers, affirming the defendants-appellees' decision to deny Pochoday additional pension benefits notwithstanding his decades of work at two jobs. Defendants-appellees are the Building Service 32B–J Pension Fund ("32B–J Fund") and its trustees and administrators ("Trustees").

The following facts are taken from the Joint Undisputed Facts submitted by the parties to the district court. Pochoday worked two concurrent full-time jobs for two separate employers. Pochoday was a full-time day building superintendent at 106–110 Lafayette Street, New York, New York ("110 Lafayette") from April 1967 through June 30, 1995, and was a full-time night porter at 120 Broadway, New York, New York ("120 Broadway") from 1965 through April 30, 1989.* Pochoday worked both full-time jobs without a break in service. Throughout these periods, Local 32B–J, Services Employees International Union, AFL–CIO ("Local 32B–J") was the exclusive collective bargaining representative for the service employees at 110 Lafayette, and Local 670, Building Service Union, AFL–CIO ("Local 670") was the exclusive collective bargaining representative for the service employees at 120 Broadway. The two unions are separate and unrelated. Pochoday was a dues-paying member of both unions.

Local 670's collective bargaining agreement with 120 Broadway required 120 Broadway to make pension contributions on behalf of employees. Pochoday was a third-party beneficiary of the Local 670 CBA and of any predecessor CBA by which 120 Broadway was bound. The 1987–1990 version of that CBA (the one cited by the parties) provided:

Employer shall continue to pay the sums required by the Trustees for every regular employee working twenty (20) hours or more per week into the presently existing Building Service Pension Funds. All employees hired after May 1, 1981 shall be covered under the Local 670 Pension Fund.

The "Building Service Pension Funds" is a reference to defendant Building Service *32B–J* Pension Fund. Therefore, under the Local 670 CBA, 120 Broadway was required to contribute pension payments to the 32B–J Fund on behalf of employees such as Pochoday, who were hired prior to May 1, 1981.

Pochoday also enjoyed the rights of a third-party beneficiary under Local 32B–J's CBA with 110 Lafayette.** The 32B–J CBA (in the 1993–96 version cited by the parties) provided for pension contributions

---

\* The Joint Undisputed Facts, and the district court's opinion, mistakenly refer to the end-date of Pochoday's employment as June 30, 1995. It is undisputed by the parties that Pochoday's employment at 120 Broadway ended on April 30, 1989.

\*\* The CBA was technically between Local 32B–J and the Realty Advisory Board on Labor Relations, Inc. ("RAB"), a multi-employer association to which Pochoday's employer belonged.

by contributing employers, such as 110 Lafayette, to defendant 32B–J Fund.

The terms of the 32B–J Fund were governed by the Building Service 32B–J Pension Fund plan ("Plan"), effective January 1, 1981. Section 5.05 of the Plan provided: "No Employee shall accumulate more than an aggregate of three months Service Credit during any calendar quarter." In Section 1.11, the Plan defines Employee as: "an employee of: (a) a Collective Bargaining Employer; (i) covered by a collective bargaining agreement with the Unions; or (ii) covered by a collective bargaining agreement with another union and employed by such employer in a category of employment in connection with building service, maintenance or operation, which category the Trustees unanimously agree should be covered for such employer, and with respect to which category such employer has agreed to make contributions in writing, in a form prescribed by the Trustees". "Collective Bargaining Employer" is defined in Section 1.07 as "an employer which has adopted the Plan, whether directly or through one of the Employer Associations, pursuant to a collective bargaining agreement with either of the Unions." The "Unions" refer to the two unions that consolidated to become Local 32B–J (Local 32B and Local 32J). The term "Union", capitalized, is only used to refer to Local 32B–J.

Before retiring on July 1, 1995, Pochoday believed that he was entitled to two separate pensions based on separate pension contributions made by his two unrelated employers to separate and unrelated pension funds. Local 670 shop stewards at 120 Broadway had told Pochoday he would be entitled to separate pensions from each of his full time jobs. In 1994, when Pochoday turned 65, he made inquiry to Local 670 concerning the amount of his pension benefits. Local 670 notified

Pochoday in writing that the pension contributions made on his behalf by 120 Broadway were all made to defendant 32B–J Fund, not to a separate fund established by Local 670. Pochoday also inquired of representatives at the 32B–J Fund regarding the pension benefits he would receive in connection with his employment at 110 Lafayette. He was told he would receive whatever pension benefits were due him. Women who worked at the front desk at the Local 32B–J main office told Pochoday that they knew nothing about Local 670.

By the time Pochoday retired, he had accumulated sufficient service credits to be entitled to the maximum pension under the 32B–J Fund in connection with his employment at 110 Lafayette ($650 per month). It is also undisputed that Pochoday had sufficient service credits in connection with his job at 120 Broadway to afford the independent entitlement to another pension. Pochoday applied for his pension benefits and began to receive a single monthly pension payment of $650. He appealed, arguing that he was entitled to two separate pensions. The appeal was denied on the ground that "under the Fund's Rules only one pension payment can be approved, since a member can only accumulate one year of service credits per calendar year."

After exhausting all union procedures to obtain additional pension benefits, Pochoday sued Local 32B–J in small claims court. Local 32B–J removed the action to the Southern District of New York. Pochoday was permitted to join as additional defendants the 32B–J Fund and its Trustees as well as the Local 670 Pension Fund. The district court subsequently dismissed Local 32B–J and the Local 670 Pension Fund, leaving only the 32B–J Fund and its Trustees as defendants.*** The parties

***Pochoday does not appeal the dismissal of    these defendants.

agreed to a trial on the papers and Judge Cedarbaum issued a judgment affirming the defendants' decision to deny Pochoday additional pension benefits.

## I. Standard of Review

■ We review the district court's legal decision on undisputed facts de novo. *See John Blair Communications, Inc. Profit Sharing Plan v. Telemundo Group, Inc. Profit Sharing Plan,* 26 F.3d 360, 363 (2d Cir.1994) ("Since the parties submitted the case to the district court on a Stipulation of Undisputed Facts, we review its decision de novo as we would a decision granting summary judgment." (citing *May Dep't Stores Co. v. International Leasing Corp.,* 1 F.3d 138, 140 (2d Cir.1993))).

■ If an employee "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan", the decision to deny benefits must be reviewed under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *accord Rombach v. Nestle USA, Inc.,* 211 F.3d 190, 194 (2d Cir.2000); *Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 249, 251–52 (2d Cir.1999); *Miller v. United Welfare Fund,* 72 F.3d 1066, 1070 (2d Cir. 1995).

■ Here, Section 7.07 of the Plan provides: "The Trustees shall, subject to the requirements of the law, judge of the standard of proof required in any case and the application and interpretation of this Plan, and decisions of the Trustees shall be final and binding on all parties." Section 7.08, which deals with the right to appeal a decision to deny benefits, provides that appeals "shall be considered by a person or committee designated by the Trustees, or all of the Trustees, at the sole discretion of the Trustees."

The language in the Agreement and Declaration of Trust (the instrument responsible for the Plan's existence) is relevant to whether the Plan gave the Trustees discretionary authority. *See Miller,* 72 F.3d at 1070 (noting that "the Fund had . . . discretionary authority under the July 16, 1990 amendments to the Agreement and Declaration of Trust"). The Agreement and Declaration of Trust provides that "[i]n the event that any disputed matter shall arise under the Plan, the decision of the Trustees upon such matter shall be binding and conclusive upon all parties and persons."

Because the Plan expressly gave the Trustees of the 32B–J Fund discretionary authority to determine eligibility and interpret the provisions of the Plan, the denial of Pochoday's benefits is reviewed for whether the Trustees' ruling was arbitrary and capricious.

## II. Trustees' Denial of Second Pension

■■ "Under the arbitrary and capricious standard of review, we may overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995) (internal quotation marks and citations omitted); *accord Miles v. New York State Teamsters Conference,* 698 F.2d 593, 599 (2d Cir.1983) ("Where the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious."). We agree with the district court that the Trustees' interpretation of the Plan and application of Section 5.05 to

deny Pochoday's claim for benefits was not arbitrary and capricious.

Pochoday argues that Section 5.05 of the Plan does not apply to his employment with 120 Broadway and therefore does not bar the award of a second pension from the 32B–J Fund. In the district court, Pochoday argued that (1) nothing in the Plan itself expressly limits the number of pensions a participant may receive and (2) Pochoday was an Employee of two separate employers and therefore should have been permitted to participate in the Plan twice. On appeal, Pochoday argues that Section 5.05 only applies to employees of employers who have adopted a CBA with Local 32B–J—a category of employers to which 120 Broadway does not belong—and therefore Pochoday was not an "Employee" with respect to his job at 120 Broadway.

Pochoday concedes that he was an Employee under the Plan with respect to his employment at 110 Lafayette (because his employer was a Collective Bargaining Employer within the terms of the Plan) but argues that Section 5.05 is a limitation only with respect to the service credits accrued at 110 Lafayette and not at 120 Broadway. His appeal seeking a second pension was denied, however, because the rules of the 32B–J Fund cap the number of service credits any Employee is permitted to receive and Pochoday reached that maximum through his day job at 110 Lafayette.

The Trustees' ruling is not arbitrary or capricious. The language of Section 5.05 is not job-specific: "[n]o Employee" is permitted to accumulate above a certain maximum number of service credits during a given time period. Pochoday was an "Employee" under the Plan: he worked at 110 Lafayette for an employer that had adopted the Plan through a CBA with Local 32B–J. Therefore, under Section 5.05 Pochoday was limited in the number

of service credits he could accumulate towards payment under the 32B–J Fund. Under the language of Section 5.05, it is irrelevant that additional service credits were accrued through a non-Collective Bargaining Employer (120 Broadway). As an Employee under the Plan, Pochoday is subject to Section 5.05 notwithstanding the fact that he may not have been an Employee (within the meaning of the Plan) with respect to his other job.

It is not arbitrary to read the definition of Employee (found in Section 1.11) to mean that Pochoday's status as an "Employee" for the purposes of Section 5.05 continued even while he was working for a non-Collective Bargaining Employer such as 120 Broadway. As previously noted, the Plan defines Employee as:

> an employee of:
>
> (a) a Collective Bargaining Employer;
>
> (i) covered by a collective bargaining agreement with the Unions; or
>
> (ii) covered by a collective bargaining agreement with another union and *employed by such employer* in a category of employment in connection with building service, maintenance or operation, which category the Trustees unanimously agree should be covered for such employer, and with respect to which category such employer has agreed to make contributions in writing, in a form prescribed by the Trustees; * * *

Section 1.11 (emphasis added). It is clear from the emphasized language in Subsection (ii) that both Subsections modify the word "employee".

Pochoday's employment at 110 Lafayette makes him an "Employee" under Section 1.11(a)(i). He worked for a Collective Bargaining Employer (110 Lafayette) and he was covered by a CBA with Local 32B–J as a result of that employment. The

definition of Employee in Section 1.11(a)(ii) also appears to encompass Pochoday's situation with respect to his job at 120 Broadway. While working for 120 Broadway, Pochoday worked simultaneously for 110 Lafayette, a Collective Bargaining Employer. He was, however, covered by a CBA with *another* union (Local 670) and, through this union's arrangement with the Trustees of the 32B–J Fund, Pochoday was covered for his employment at 120 Broadway. Nothing in the definition of Employee suggests that the Collective Bargaining Employer and the "employer" mentioned in Subsection (ii) are necessarily the same entity. Therefore, it was not arbitrary and capricious for the Trustees to conclude that Pochoday's employment with one Collective Bargaining Employer made him an Employee subject to the limitations in Section 5.05 with respect to service credits accrued in his employment at both jobs.

III. *Equitable Estoppel*

■■ We agree with the thorough reasoning in Judge Cedarbaum's opinion as to why the 32B–J Fund may not be equitably estopped from denying Pochoday a second pension. In "extraordinary circumstances", courts may apply principles of estoppel to require the payment of pension funds. *See Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1041 (2d Cir.1985) ("[B]ecause the actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan, courts have been reluctant to apply the estoppel doctrine to require the payment of pension funds." (internal quo-

tation marks and citations omitted)); *see also Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993) (citing *Chambless* for the principle that "under 'extraordinary circumstances' principles of estoppel can apply in ERISA cases").

■ Pochoday did not prove the elements of estoppel, which are "(1) material representation, (2) reliance and (3) damage." *Lee,* 991 F.2d at 1009. Although the employees of *Local 670* allegedly told Pochoday that he would receive two separate pensions upon retirement, there is no evidence that the defendants before us, the 32B–J Fund and its Trustees, misrepresented the terms of the Plan to Pochoday in a material way. The employees at the 32B–J Fund's main offices simply told Pochoday that he would receive the benefits he was due under the terms of the Plan.

■ Pochoday charges that he was misled by the phrase "Building Service Pension Funds" (as opposed to "Building Service 32B–J Pension Fund") in the Local 670 CBA. Assuming that this wording is both material and that Pochoday relied on it to his detriment, it is not a misrepresentation that can be attributed to the defendants before us.

It seems undisputed that Pochoday honestly believed he would receive a pension for each full-time job he held for over twenty years. However, the Trustees' interpretation of the Plan is not arbitrary and capricious, and Pochoday's mistaken belief cannot be attributed to any wrong by the defendants in the instant case; so Pochoday cannot rely on the doctrine of equitable estoppel.

We appreciate that the result in this case is painful, but the result we reach follows the law as it exists.**** Any re-

---

**** Of course, nothing in this order precludes Pochoday from bringing a state court cause of action against Local 670 based on promissory estoppel, assuming that New York's six-year statute of limitations has not yet run.

form is a matter for Congress, which could perhaps amend ERISA to require that multi-employer funds notify employees of multiple participating employers that their ability to realize more than one pension may be compromised. We are directing the Clerk of the Court to convey a copy of this summary order highlighting these comments to the Chairs of the Senate Committee on Health, Education, Labor and Pensions and the House Committee on Education and the Workforce.

For the reasons set forth above, the judgment is hereby AFFIRMED.